# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

C.R. and P.R.,
Individually, and as
Parents of H.R.,

Plaintiffs

v.

BENTON SCHOOL DISTRICT,

Defendant

§
§
§
§
§
§
§
§
§
§
§

CASE NO. 4:22-cv-00167-BSM

---

# MEMORANDUM BRIEF IN SUPPORT OF
# MOTION FOR ATTORNEYS' FEES AND COSTS

---

## I.  INTRODUCTION

Plaintiffs C.R. and P.R. ("Parents") move for attorneys' fees and costs as the prevailing parties in the state administrative proceedings and proceedings in the district court on their due process complaint against the Benton School District ("District") pursuant to the Individuals with Disabilities Education Act ("IDEA"). As the prevailing parties, Parents may

recover a reasonable attorneys' fees and costs under the IDEA, 20 U.S.C.

§1415(i)(3). *Parents seek an award of attorneys' fees and costs in the*

*amount of $60,792.80. The amount represents an attorneys' fee of*

*$52,587.50 for the work of lead counsel Theresa L. Caldwell, $5,841.68 for*

*the work of Clay Fendley, of counsel, $970.82 in administrative work, and*

*$1,392.80 for costs.*

## II.   IDEA ATTORNEYS' FEES AND COSTS

The IDEA allows an award of attorneys' fees and costs to parents of a

disabled student that are prevailing parties in proceedings under the

IDEA. It provides that "[i]n any action or proceeding brought under this

subsection, the court, in its discretion, may award reasonable attorneys'

fees as part of the costs to the prevailing party who is the parent of a child

with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I).

Courts have interpreted "any action or proceeding" broadly to allow

prevailing parents to recover attorneys' fees and costs for: (1) litigating due

process complaints in state administrative proceedings; (2) defending the

hearing officer's decision on appeal to district court; (3) seeking to recover attorneys' fees and costs in the district court; and, (4) appealing the district court's decision. *See Johnson v. Bismarck Pub. Sch. Dist.*, 949 F.2d 1000, 1003 (8th Cir.1991) (litigating due process complaints in State administrative proceedings); *Ash v. Lake Oswego Sch. Dist.*, No. 7J, 980 F.2d 585, 590 (9th Cir. 1992) (defending the State hearing officer's decision on appeal to district court); *Jones v. MacMillan Bloedel Containers, Inc.*, 685 F.2d 236, 239 (8th Cir. 1982) (seeking to recover attorneys' fees and costs before the district court); and, *John T. ex rel. Robert T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 867 (8th Cir. 2001) (appealing the district court's decision).

Like other civil rights statutes, the purpose of the IDEA's attorneys' fee provision is to ensure that the rights granted by the IDEA are adequately enforced. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) ("Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced."). As the Supreme Court explained, "The effective enforcement of Federal civil rights statutes

depends largely on the efforts of private citizens, and unless reasonable attorney's fees could be awarded for bringing these actions, Congress found that many legitimate claims would not be redressed." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560, (1986) (*quoting* H.R. Rep. No. 94-1558, p. 1 (1976)), *supplemented*, 483 U.S. 711 (1987). As to the IDEA, a district court noted, "Congress intended that meritorious actions taken on behalf of disabled children receive the benefit of attorneys' fee awards; otherwise, only those who could afford to sue for enforcement of their rights would receive the protection and benefit of the law." *Cain v. Nevada Cty. Sch. Dist.*, No. 4:10-CV-04011, 2011 WL 6370082, at *3 (W.D. Ark. Dec. 20, 2011) (citing 132 Cong. Rec. S. 9277 (July 17, 1986)). Accordingly, "Unless 'special circumstances' exist to make an award unjust, attorney fees should ordinarily be awarded to the prevailing party." *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1377 (8th Cir. 1996) (*citing Borengasser v. Arkansas State Bd. of Ed.*, 996 F.2d. 196, 199 (8th Cir.1993)).

Unlike other civil rights statutes, the IDEA[1] does not allow the

prevailing party to recover compensatory or punitive damages.

*Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996). Thus, counsel in

an IDEA case has no prospect of a contingency fee windfall. To ensure

competent counsel will bring IDEA cases, the "ultimate goal" must be to

adequately compensate counsel. *See Grendel's Den, Inc. v. Larkin*, 749

F.2d 945, 950 (1st Cir. 1984). "In computing the fee, counsel for a

prevailing party should be paid, as is traditional with attorneys

compensated by a fee-paying client, for all time reasonably expended on

a matter." *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983) (internal

quotation omitted).

Since 2008-2009, attorneys' fees awarded in IDEA cases in Arkansas

have been inadequate, and as a result, it is almost certain that "legitimate

claims [have not been] redressed." *Pennsylvania*, 478 U.S. at 560. A review

---

[1] Plaintiffs also cannot recover emotional distress or punitive damages if they prevail on any potential disability discrimination claim. *See Cummings v. Premier Rehab Keller*, P.L.L.C., 212 L. Ed. 2d 552, 142 S. Ct. 1562, 1576, reh'g denied, 213 L. Ed. 2d 1081, 142 S. Ct. 2853 (2022) ("[W]e hold that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here.").

of IDEA due process hearing decisions since 2008-2009 revealed that Caldwell is the only Arkansas lawyer specializing in IDEA cases. Attached to **Exhibit B**, **Clay Fendley's Declaration**, is a review of IDEA due process hearing decisions since 2008-2009. In the last five years, Caldwell has represented parents in 33 of 42 due process hearings, and no other lawyer has represented parents in more than two due process hearings. *See* **Exhibit B, Review, ¶¶4(j), (k)**. Arkansas schools enroll 476,579 students. Assuming 12 percent[2] of students qualify for special education, there are around 57,000 special education students in Arkansas. Therefore, there is one lawyer (Caldwell) serving all 57,000 special education students in Arkansas. *See* **Exhibit B, Review, ¶5**.

In the past, federal courts in Arkansas have *not* awarded the Caldwell Law Office ("CLO") a full fee, but instead, have on average awarded CLO 52 percent of its claim for attorneys' fees and costs. *See* **Exhibit B, CLO Fee Awards**. In other words, CLO gets paid for roughly half of the actual

---

[2] https://nces.ed.gov/fastfacts/display.asp?id=64 ("In school year 2021–22, across the 50 states and the District of Columbia, the percentage of students served under IDEA ranged from 11 to 20 percent of total public school enrollment.").

time it has expended on a case. Not surprisingly, CLO's fee awards have *not* been sufficient to incentivize other Arkansas lawyers to regularly handle IDEA cases.

As the only IDEA expert in Arkansas, Caldwell should be recognized as *the authority* on what it takes to win an IDEA case. In the last five years, Caldwell has won 25 of 33 due process hearings (76 percent), compared to other lawyers winning 2 of 7 due process hearings (29 percent). *See* **Exhibit B, Review, ¶¶4(l), (o)**. Moreover, Caldwell's winning percentage far exceeds that of lawyers in other states. The limited data available shows lawyers win 51 percent in North Carolina, 59 percent in Pennsylvania, 13 percent in Maryland, and 34 percent in Texas. *See* **Exhibit B, Review, ¶7**. Therefore, even if you do not like her "style," Caldwell's results establish her as one of the best IDEA lawyers in the United States.

Rather than treating Caldwell one of the best IDEA lawyers in the United States, Arkansas federal courts have routinely devalued her work and arbitrarily reduced her billable hours, ironically, citing "her expertise involving educational rights." *See, e.g., Does v. Mayflower Sch. Dist.*, 4:21-

cv-00039-BSM, Doc. No. 59, p. 2 (E.D. Ark. Sept. 18, 2023). In other words, federal courts have found that Caldwell's experience should have allowed her to spend fewer hours on IDEA cases. With all due respect, nobody in Arkansas knows better than Caldwell what it takes to win a due process hearing. What Caldwell has learned over the last 15 years is that she must present *clear and convincing evidence* to meet parents' burden of proof,[3] to overcome the hearing officer's deference to school personnel, and ultimately, to win the due process hearing. Taking this approach, Caldwell's winning percentage has increased from 43 percent to 76 percent in the last five years. *See* **Exhibit B, Review, ¶¶4(e), (j)**.

Stated another way, school district attorneys are now losing 76 percent of their cases, and they know why – Caldwell introduces too many exhibits, calls too many witnesses, and asks witnesses too many questions. While school district attorneys have been losing due process hearings, they have been winning the fight on attorneys' fees and costs.

---

[3] The actual liability standard is preponderance of the evidence. *See* 20 U.S.C. §1415(i)(2)(C)(iii).

For example, after a five-day hearing, a school district attorney argued the hearing "could have been tried in one eight hour day," and the district court concluded, "I agree." *Jacksonville N. Pulaski Sch. Dist. v. D.M.*, No. 4:20-CV-00256-BRW, 2021 WL 8016926, at *3 (E.D. Ark. July 20, 2021). To explain, the district court found Caldwell's case "could have been streamlined because . . . A.B. had been in kindergarten for less than three months" and because "both Defendant's lawyers have over 25 years of experience in education law." *Id*. However, as noted above, what Caldwell has learned over the last 15 years is that she must present *clear and convincing evidence* to win a due process hearing. That takes more exhibits, more witnesses, and more questions of those witnesses.

Moreover, CLO does not have *two lawyers* litigating due process hearings. Fendley[4] reviews parents' records and drafts a due process complaint that Caldwell reviews, revises, and files. Caldwell then litigates the due process hearings by herself. After the due process hearing, Fendley prepares a draft post-hearing brief that Caldwell reviews, revises,

———————————

4 Since December of 2020, Fendley has lived and worked remotely from New Mexico.

9

and files. This is an efficient system that minimizes the amount of duplicative attorney time spent on cases.

Additionally, the school district attorney's argument that the hearing "could have been tried in one eight hour day" ignores the fact that Arkansas due process hearing officers ("HOs") have authority to "limit the length of any presentation in order to proceed with the hearing in an expeditious manner." ADE Spec. Ed. Rules 10.01.32.[5] *See* ADE Spec. Ed. Rules 10.01.35.2 ("Evidence and testimony shall be excluded if . . ."). Moreover, ADE rules state, "A hearing officer shall exclude cumulative, irrelevant or unnecessary evidence, even in the absence of an objection ay any party to the hearing." ADE Spec. Ed. Rule 10.01.35.3.

Therefore, if a hearing lasts five days, it means the HO found five days were needed for the parties to present noncumulative, relevant, and necessary evidence. This Court "must give 'due weight' to the outcome of the administrative proceedings." *I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.*, 863 F.3d 966, 970 (8th Cir. 2017). For these reasons, the District

---

[5] https://dese.ade.arkansas.gov/Files/20210105160557_10.00_MEDIATION_AND_HEARINGS.pdf

should be precluded from arguing that the due process hearings in this case "could have been tried in one eight hour day," for example. *See I.Z.M.*, 863 F.3d at 972 (issue and claim preclusion apply to HO decisions).

Finally, other factors deter other lawyers from regularly taking IDEA cases, and those factors should be recognized in determining a reasonable fee. First, IDEA cases are complex because they require knowledge of both federal and state statutes and rules. Second, IDEA cases require lawyers to sue the local school district, the largest employer in most small towns. Small town lawyers usually practice in state court and have no interest in suing their local school district in a case that will lead them to federal court. *See Hensley*, 461 U.S. at 434 (factors include "the undesirability of the case")

Third, most parents cannot afford to pay counsel, and CLO takes cases regardless of parents' ability to pay. CLO risks no recovery if it does not prevail, and even when it prevails, CLO must wait two to three years before getting paid. For example, CLO was most recently awarded fees in *Does v. Mayflower Sch. Dist.*, *supra*, on September 18, 2023, based on a

due process complaint filed July 10, 2020, more than three years earlier. *See id.*, Doc. No. 1, ¶1.

Fourth, parents know the importance of their child's education and are emotionally invested in doing everything possible to make sure their child gets the education they need and deserve. With so much at stake, counsel in IDEA cases feel immense pressure to do everything possible to win the due process hearing and to get the child the services they need to succeed. Thus, IDEA cases are more emotionally taxing than the average civil case.

Therefore, IDEA cases are complex, risky, and emotionally taxing. Arkansas federal courts have failed to adequately account for these factors in determining a reasonable fee, and as a result, Arkansas has one IDEA lawyer -- Caldwell. To ensure competent counsel for parents in IDEA cases, Arkansas federal courts must start adequately compensating IDEA counsel. *See Knox Cnty., Tennessee v. M.Q.*, No. 320CV00173DCLCJEM, 2022 WL 946285, at *3 (E.D. Tenn. Mar. 29, 2022) ("An hourly rate of $425 for such complex, taxing, and risky litigation is adequate to encourage other

competent attorneys in the area to take on special education cases, while also avoiding a windfall to attorneys.").

## III.  Proceedings Below

On April 26, 2021, Parents filed a due process complaint against the District alleging procedural and substantive violations of the IDEA denied H.R. a free appropriate public education ("FAPE"). **Doc. No. 8-1, p. 2**. The case was assigned to an impartial due process hearing officer ("HO") and numbered H-21-34 ("DPH #1"). The due process hearing began in-person on July 19, 2021, and was finished via Zoom on July 20-21, 2021. Eleven witnesses, including Parents, testified at the due process hearing. *Id.* **at 4**.

On August 23, 2021, the HO issued her Final Decision and Order. **Doc. No. 8-1, p. 36**. The HO ruled in favor of Parents finding the District denied H.R. a FAPE from August 14, 2019, to April 26, 2021. Specifically, the HO found Parents proved by a preponderance of the evidence that the District failed to provide special education and related services in conformity with the individualized education program ("IEP"). *Id.* **at 32-35**.

The HO ordered the District to provide 2140 minutes of compensatory speech therapy and 1480 minutes of compensatory occupational therapy. *Id.* **at 35**.

On August 18, 2021, Parents filed a second due process complaint against the District alleging procedural and substantive violations of the IDEA denied H.R. a FAPE. **Doc. No. 8-2, p. 2**. The case was assigned to a HO and numbered H-22-05. The due process hearing lasted five days beginning on September 30, 2021, and ending on October 20, 2021. Ten witnesses, including Parents, testified at the due process hearing. *Id.* **at 4**.

On November 23, 2021, the HO ruled in favor of the District finding Parents failed to prove by a preponderance of the evidence that H.R.'s IEP was inappropriate or not adequately implemented. **Doc. No. 8-2, pp. 29-30**.

On March 17, 2022, Parents filed a third due process complaint against the District alleging procedural and substantive violations of the IDEA denied H.R. a FAPE. **Doc. No. 9, p. 2**. The case was assigned to a

HO and numbered H-22-38. The due process hearing lasted two days, May 24-25, 2022. *Id.* **at 4**. Eight witnesses, including Parents, testified at the due process hearing. *Id.* **at 5**. For judicial economy, the records of the prior due process hearings were incorporated into the record of H-22-38. *Id.* **at 5**.

On June 30, 2022, the HO ruled in favor of Parents finding the District denied H.R. a FAPE from December 8, 2021, through February 28, 2022. **Doc. No. 9, p. 42**. Specifically, the HO found Parents proved by a preponderance of the evidence that H.R. needed but did not receive speech therapy and occupational therapy. *Id.* **at 41**. The HO ordered the District to conduct a speech therapy evaluation and a occupational therapy evaluation and to thereafter provide H.R. therapy consistent therewith. *Id.* **at 42-43**. The relief awarded in H-22-38 made it unnecessary for Parents to get the decision in H-22-05 reversed.

## IV.   PROCEEDINGS IN THIS COURT

Parents filed their original Complaint on February 18, 2022, seeking IDEA attorneys' fees and costs as the prevailing party in H-21-34, appealing the decision in favor of the District in H-22-05, and seeking damaged for disability discrimination. **Doc. No. 1, pp. 2-3**. The District answered denying liability, but it did not appeal the adverse decision in H-21-34. *See* **Doc. No. 3**.

On September 15, 2022, Parents filed an Amended and Supplemental Complaint seeking IDEA attorneys' fees and costs as the prevailing party in H-21-34 and H-22-38 and dropping their appeal of H-22-05. **Doc. No. 8**. The relief awarded in H-22-38 made it unnecessary for Parents to get the decision in H-22-05 reversed. The District answered denying liability and counterclaimed appealing the decision in H-22-38. **Doc. No. 10**. Parents answered the counterclaim defending the decision in H-22-38. **Doc. No. 11**.

On May 8, 2023, Parents moved to voluntarily dismiss their claim for disability discrimination. **Doc. No. 13**. The claim was dismissed on May 12, 2023. **Doc. No. 14**.

On September 29, 2023, the District moved to voluntarily dismiss its appeal of the decision in H-22-38. **Doc. No. 16**. The appeal was dismissed on September 29, 2023. **Doc. No. 17**.

Therefore, the only remaining claims for the Court's disposition are Parents' claims for IDEA attorneys' fees and costs as the prevailing parties in H-21-34 and H-22-38. This will include litigating the due process hearings, defending those HO's decision in H-22-38 on appeal, and seeking attorneys' fees and costs in this Court.

## V.    REASONABLE ATTORNEYS' FEES

The Supreme Court has identified the "lodestar method" as the preferred means for calculating reasonable attorneys' fees under federal fee-shifting statutes. *See, e.g.*, *Pennsylvania*, 478 U.S. at 556. Under the lodestar method, the court should "determine 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Simpson v. Merchs. & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006) (*quoting Hensley*, 461 U.S. at 433). This calculation results in what is

called the "lodestar," which is presumed to be a reasonable fee.

*McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). As a part of

and in addition to calculating the lodestar, the Court should consider the

factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d

714, 717-19 (5th Cir. 1974). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of
> the question; (3) the skill requisite to perform the legal service
> properly; (4) the preclusion of other employment by the
> attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the
> amount involved and the results obtained; (9) the experience,
> reputation, and ability of the attorney; (10) the undesirability of
> the case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 434 n.3. After determining the lodestar, "there remain

other considerations that may lead the district court to adjust the fee

upward or downward, including the important factor of the 'results

obtained.'" *Hensley*, 461 U.S. at 434 (*quoting Johnson*, 488 F.2d at 718).

### A.    Reasonable Hourly Rate

### 1. Theresa L. Caldwell

Plaintiffs' lead counsel, Theresa L. Caldwell, has been licensed to practice law in state and federal court in Arkansas since 1991. For almost two decades, Caldwell's practice has focused on representing parents of disabled children in civil rights litigation under the IDEA. She is a member of the Counsel of Parents' Attorneys and Advocates ("COPAA"). She most recently attended the 2023 COPAA conference in San Francisco, California to receive relevant continuing legal education. This is a significant expense that she regularly incurs to maintain the knowledge and skill necessary to practice in the under the IDEA. *See* **Exhibit A, Declaration of Theresa L. Caldwell**.

As discussed above, Caldwell is the only IDEA lawyer in Arkansas and her results establish her as one of the best IDEA lawyers in the United States. Accordingly, Caldwell respectfully requests an hourly rate of $350.00 for her work in the state administrative proceedings and in proceedings before this Court. One month ago, Caldwell was awarded $350.00 per hour for her work on an IDEA case in the Eastern District of

Arkansas. *See A.W. v. Pulaski Cnty. Special Sch. Dist.*, No. 4:22CV00168 JM, 2023 WL 5959496, at *2 (E.D. Ark. Sept. 13, 2023). Based on her experience in this legal community and knowledge of rates charged by other lawyers for the kind and quality of legal services she provided in this case, it is her opinion that $350.00 per hour is a reasonable hourly rate for her work on this case. This opinion is supported by two experienced civil rights attorneys who regularly practice in the Eastern District of Arkansas, Paul J. James and Austin Porter, Jr. *See* **Exhibits C and D**. It is further supported by the award of fees in another civil rights case. Lead counsel for the Joshua Intervenors was awarded attorneys' fees at a rate of $350.00 per hour for monitoring compliance with a school district's implementation of a desegregation consent decree. *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*, No. 4:82-CV-866-DPM, 2019 WL 3408892, at *2 (E.D. Ark. July 26, 2019) (awarding $350.00 per hour to lead counsel). *See* **Exhibit A, Declaration of Theresa L. Caldwell**.

Finally, the "important factor of the results obtained" justifies an award of $350.00 per hour for Caldwell's work in this case. *See Hensley*,

461 U.S. at 434 (internal quotation omitted). Parents were awarded

substantial compensatory therapy in H-21-34 and two evaluations

necessary to get H.R. the therapy he needed in H-22-38. H.R. will benefit

from these awards for the rest of his life.

### 2. Clay Fendley

Caldwell was assisted in the case by Clay Fendley, of counsel at CLO.

Fendley is an attorney in good standing licensed to practice law in state

and federal court in Arkansas since 1992. Since Fendley began practicing

law, he has been involved in various kinds of civil rights litigation,

representing both plaintiffs and defendants. Since 2017, he has been of

counsel at CLO and worked almost exclusively representing parents in

IDEA cases. Fendley is a member of the Counsel of Parents' Attorneys and

Advocates ("COPAA"). He most recently attended the 2023 COPAA

conference in San Francisco, California to receive continuing legal

education. *See* **Exhibit B, Declaration of Clay Fendley**.

Plaintiffs seek attorneys' fees for Fendley's work on this case at an hourly rate of $250.00 per hour. One month ago, Fendley was awarded $250.00 per hour for her work on an IDEA case in the Eastern District of Arkansas. *See A.W*, No. 4:22CV00168 JM, 2023 WL 5959496, at *2. Based on his experience in this legal community and knowledge of rates charged by other lawyers for the kind and quality of legal services provided, it is Fendley's opinion that $250.00 per hour is a reasonable hourly rate for his work on this case. This opinion is supported by two experienced civil rights attorneys who regularly practice in the Eastern District of Arkansas, Paul J. James and Austin Porter, Jr. *See* **Exhibits C and D**. It is further supported by the award of fees in another civil rights case. Associate counsel for the Joshua Intervenors was awarded attorneys' fees at a rate of $300.00 per hour for monitoring compliance with a school district's implementation of a consent decree. *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*, No. 4:82-CV-866-DPM, 2019 WL 3408892, at *2 (E.D. Ark. July 26, 2019) (awarding $300.00 per hour to Austin Porter, Jr.). Finally, as discussed above, the "important factor of the results obtained" justifies an award of

$250.00 per hour for Fendley's work in this case. *See Hensley*, 461 U.S. at 434 (internal quotation omitted).

### B. Hours Reasonably Expended

#### 1. Theresa L. Caldwell

Caldwell reasonably expended a total of 91:14 hours in DPH #1; 56:19 hours in DPH #3; and 2:42 hours in this federal case for a total of 150:15 hours in the two (2) Due Process Hearing proceedings, and this action and according, a reasonable attorneys' fee for the work she performed in this case is $52,587.50. Based on actual time records and review of the docket report, pleadings, motions and orders filed in this case, I prepared a reconstructed time sheet describing my work on this case. Attached as Exhibit 1 to my Declaration are my invoices for the two (2) Due Process Hearing cases and this federal case that includes my time and costs incurred in these proceedings. The invoices for my time and administrative work attached to my Declaration total $53,555.32. I have exercised billing judgment and only included reasonable and necessary

hours I spent on this case. My time entries were prepared from actual time records - but many time entries such as many conversations with Parents and District Counsel are not included.

## 2. Clay Fendley

Fendley maintained contemporaneous time records of his work on this case. *See* **Exhibit B**. He has reviewed his contemporaneous time records and exercised billing judgment to remove all unnecessary, unreasonable and/or duplicative time entries. Fendley worked a total of 26.78 hours on this case. After removing all time spent on the disability discrimination claim, Fendley reasonable expended 23.38 hours drafting due process complaints and/or post-hearing briefs, defending the hearing officer's decisions, and seeking to recover attorneys' fees in this Court. Thus, Plaintiffs seek to recover for 23.38 hours at $250.00 per hour totaling $5,841.68 for Fendley's work on this case. *See* **Exhibit B, Declaration of Clay Fendley**.

## VI. COSTS

Parents are also entitled to recover his costs. 20 U.S.C. §1415(i)(3)(B).

Parent seeks to recover costs allowable under 28 U.S.C. §§1920 and other

applicable law in the amount of $772.00. *See Neufeld v. Searle Labs.*, 884

F.2d 335, 342 (8th Cir. 1989) (interpreting Age Discrimination in

Employment Act). *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396

(5th Cir. 2003) ("Accordingly, the district court is not precluded on remand

from awarding, as part of attorney's fees, out-of-pocket expenses for

travel.").

## VII. CONCLUSION

Accordingly, *Plaintiffs seek an award of attorneys' fees and costs in

the amount of $60,792.80. The amount represents an attorneys' fee of

$52,587.50 for the work of lead counsel Theresa L. Caldwell, $5,841.68 for

the work of Clay Fendley, of counsel, $970.82 of administrative work, and

$1,392.80 for costs.*

Respectfully submitted,

Theresa L. Caldwell

Arkansas Bar Number 91163
Clay Fendley
Arkansas Bar Number 92182
Attorney for Plaintiffs

**CALDWELL LAW OFFICE**
14 Alban Lane
Little Rock, Arkansas 72223
Tel.: 501-414-0434
Email: tlcatty@gmail.com
Email: clay@specedattorney.com